**Michael Baldwin, PLC**
Michael W. Baldwin, State Bar No. 12625
12080 E 8^(TH) Street
Tucson, Arizona 85748-8903
Telephone: (520) 870-0709
E-Mail: Michael.Baldwin@azbar.org
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| *In re:*<br>Skyline Ridge, LLC, an Arizona limited liability company,<br>Debtor.<br><br>3400 E Finger Rock Circle<br>Tucson AZ 85718<br>EIN: 86-xxxx-4126 | (Chapter 11)<br>Case No.: 4:18-bk-01908-BMW<br><br>MOTION TO APPROVE SALE OF REAL PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS<br>And<br>TO APPROVE CONTRACT BETWEEN THE DEBTOR AND AN INSIDER<br><br>(7431 N Cobblestone Road Tucson, AZ; Pima County Tax Parcel # 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) |

Skyline Ridge, LLC, the above-captioned Debtor (hereinafter, "**Debtor**"), by and through counsel undersigned, hereby moves for an Order of this Court approving the sale of a residential property located in Tucson, Arizona. In a over-simplified summary, Debtor has a deal that will allow the subject property to be remodeled, sold for a higher price than it could fetch before such remodel, and all of the benefits of that increased value shall inure to Northern Trust Bank ("**NTB**"). To support its motion, Debtor asserts the following:

1) Debtor is the owner of real property located at 7431 N Cobblestone Road Tucson, AZ 85718. The Debtor's real property that is the subject of this motion has been designated by Pima County as Tax Parcel No. 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; (hereinafter referred to as the "**Subject Property**").

2) This property is subject to only one note and deed of trust held by NTB. Debtor believes that NTB will consent to this sale.

3) Debtor has owned the Subject Property for several years. At present, the Subject Property is worth between $625,000 and $675,000. There are unpaid real property taxes against the Subject Property of $58,036.99 (thru September), and there are Homeowners Association assessments against the Subject Property of more than $25,000.

4) Debtor asserts that if NTB were to repossess the Subject Property it would not receive net sale proceeds greater than $600,000, and if it were to credit bid, become the purchaser, and then resell the property in its present condition, when the sale proceeds finally came in months later, NTB would receive less than $650,000.

5) Debtor asserts that the highest and best use of the Subject Property would be to do a complete remodel of the Subject Property before it is offered for sale. Debtor has partially completed the remodel of the Subject Property, but ran out of operating capital. Although changing rapidly, that situation has not improved fast enough.

6) Debtor asserts that if the Subject Property were completely remodeled in a fashion that matches the luxury homes in its neighborhood the sale price would exceed $1,000,000, and perhaps exceed $1,300,000. In other words, there is great value to the bankruptcy estate if the house is remodeled before it is sold.

7) At the petition date, the sum of all secured claims in this case was around $2.2 million, and that sum has been decreased by the sales of property by the debtor that have reduced the principal balance on all secured claims by approximately $344,000[1]. Debtor has a fiduciary duty to create a mechanism whereby the value of the Subject Property is maximized

---

[1] In addition to the $344,000 already completed escrow, there is another sale for $170,000 in escrow, and set for hearing on October 3, 2018.

in an efficient and expeditious manner.

**DEBTOR HAS A PLAN TO HARVEST THE VALUE IN THE SUBJECT PROPERTY**

8) Ahmad Zarifi is the principal of and manager of Skyline Ridge, LLC. Ahmad Zarifi's son, Sami Zarifi is the owner of a general contracting business, Sami Zarifi 14, LLC. Sami Zarifi 14 builds luxury houses, following a model that Sami partially learned under his father's tutelage and initially patterned after his father's business (Ahmad Zarifi has built more than 300 homes in the Tucson area).

9) Sami Zarifi, through his companies, is willing to purchase the Subject Property and work with his father to ensure that Northern Trust Bank receives, and other creditors of this estate, receive the maximum benefit that could be derived under any scenario.

**TWO SALES WILL HAVE TO OCCUR**

10) To fund the costs of the remodel, there will have to be two sales:
   a) the 1st Sale will occur as an outright purchase of the Subject Property for $650,000; after payment of superior liens, NTB will be paid less than $650,000.
   b) the 2nd Sale will occur when the Buyer has completed the remodel and the property is sold to a third party at market value.

As explained below, all of the transactions will be set up to ensure that the added value of that remodel will inure to the benefit of NTB.

**STRUCTURING THE FIRST SALE FOR $650,000**

11) As soon as the 1st Sale closes, NTB will receive the present value of its secured claim in the Subject Property.

12) Debtor has not hired a realtor to represent the interest of the Debtor in this matter. Buyer has its own real estate agent, and Buyer will pay that agent whatever fee she will charge in this matter, to be paid out of escrow and out of funds that belong solely to the Buyer. This will save approximately $47,250 in real estate commissions (at the usual 6%

Michael Baldwin, PLC

1 commission rate).

2   13) The "Real Estate Purchase Contract" for the Subject Property is attached to this Motion as Exhibit "**1**" and incorporated herein by this reference (the "**Purchase Contract**").

  14) The Purchase Contract is contingent upon the following duties imposed on both sides of such contract:

 a) Ahmad Zarifi is the principal of and manager of Skyline Ridge, and he is also a licensed civil engineer with more than thirty years of professional experience. He has agreed to draft and submit to the Buyer for the Buyer's use all plans for the remodel---all existing plans and all that need to be drafted---as are necessary to obtain permits from the City of Tucson and any other governmental entity, without any charge to the Buyer for such activity.

 b) Ahmad Zarifi shall assist in all aspects of obtaining such permits, working at the direction of Sami Zarifi, his son, who is the principal of the Buyer, without any charge for such activity.

 c) Ahmad Zarifi shall perform consulting work on the completion of the remodel of the Subject Property as is requested by the Buyer, by Sami Zarifi 14, LLC or by Sami Zarifi in his individual capacity, and provide all such consulting work for free.

 d) The Buyer will purchase the Subject Property for $650,000, with a $400,000 loan provided by a private party lender with that loan transaction being brokered by John Rallis of VIP Mortgage, Inc. (the "**VIP Loan**"). See Exhibit "**2**", VIP's loan commitment letter. Mr. Rallis is a creditor in this case; Mr. Rallis is not an insider[2].

 e) The $250,000 remainder of the purchase price will be paid in cash by Willpower Properties, LLC, at close of escrow. See Exhibit "**3**", Willpower Properties most recent

---

[2]  VIP Mortgage, Inc. is not a creditor, nor is it an insider.

Page 4 of 9                               Michael Baldwin, PLC

1     bank statement evidencing cash in excess of that purchase price.

2   f) After Close of Escrow, VIP's $400,000 loan will be secured by a 1st position deed of
3     trust in favor of VIP Mortgage (or its assign).

4   g) The Buyer will then complete the remodel and advance, as necessary, up to $100,000
5     of its own funds to pay for the cost of such remodel; all choices of cabinetry,
6     appliances, lighting, surface materials, windows, doors, flooring, and any fixtures to be
7     installed on the Subject Property are all subject to the approval of Ahmad Zarifi, which
8     approval shall be in his sole discretion;

9   h) In consideration of Sami Zarifi performing these tasks, Skyline will allow Buyer to
10     utilize any of the pre--purchased cabinetry, appliances, lighting, countertop materials,
11     windows, doors, flooring, and any fixtures to be installed on the Subject Property as a
12     part of the Remodel provided that all of the work performed on the Remodel is
13     approved by Debtor.

14   i) Buyer will complete the remodel within 60 calendar days of the close of escrow of this
15     Sale.

16 **THE CREDITORS TRUST DEED WILL PROTECT NTB'S INTEREST UNTIL THE 2ND**
17 **SALE CLOSES**

18   j) The Buyer will list the Subject Property for sale within 15 calendar days of completion
19     of the remodel. NOTE: when the Buyer sells the Subject Property after it has been
20     remodeled, such sale is hereinafter referred to as the "**2nd Sale**".

21   k) There will have to be a mechanism to ensure that when the 2nd Sale occurs, the
22     benefits of the remodel—a substantial increase in the value of the property—are
23     protected for the benefit of the bankruptcy estate and its creditors. The parties have
24     settled upon this mechanism: when the Buyer takes full title to the property at close
25     of escrow on the 1st Sale, as soon as VIP's deed of trust is recorded to secure its

1 $400,000 loan, the very next item to be recorded in sequence will be the a duly
2 executed Deed of Trust (hereinafter, the "**Creditors Trust Deed**") that secures the
3 payment of that increased value to the bankruptcy estate, as explained below.

l) Of course, when the time comes to transfer title to a new purchaser as homeowner, the $400,000 VIP mortgage will have to be paid off in order to transfer free and clear title. And, Buyer will be entitled to be repaid his $250,000 payment, with 10% interest thereon accruing from the date of the 1st Sale. And, Buyer will be paid a fee of $100,000 for the completion of the remodel. NTB can be certain it will obtain the net benefit of completion of the remodel by the recordation of the Creditor's Trust Deed. The Creditors Trust Deed is the mechanism to ensure that the increased value of the Subject Property as the result of the remodel is returned to the bankruptcy estate. The items discussed generally in this paragraph are specifically defined in the Creditors Trust Deed as the "Excess Sale Proceeds". See Exhibit "**4**".

15) Debtor asserts that the Court can approve the sale of the Subject Property solely because NTB will benefit entirely from the sale.

16) This is the type of transaction that, ironically, can only occur with the beneficent cooperation of an insider. No one but a dutiful son who learned his trade under the tutelage of his father could be expected to perform as herein set forth.

17) On these facts, Debtor asserts that the requirements of 11 U.S.C. § 363(f) for the sale of property free and clear of liens, claims and interests, can readily be satisfied. However, to avoid the additional work that a § 363(f) motion imposes upon the Court, the Debtor and the creditor, and perhaps also all of the creditors in this matter, Debtor has chosen to file this Motion without actually invoking the protections of § 363(f), while awaiting a decision by NTB if it will consent to the sale. If NTB does not consent, a modified version of this motion will be filed pursuant to § 363(f)(5).

Michael Baldwin, PLC

18) Every sale by the Debtor benefits the body of creditors. One particular creditor receives instant satisfaction---they get the money. But each sale also reduces Skyline's total debt, and most importantly a reduction in total debt causes a linear reduction in the monthly debt service. As noted above at footnote 1, Debtor's two previous sales that have already closed escrow have yielded debt reduction payments of $344,000, and there is another sale for $170,000 set for approval on October 3. Add the proceeds from the 1st Sale to that subtotal, and Debtor will have generated more than $1.1 Million in debt reduction, cutting its total secured debt to approximately **HALF** of the sum owed on the Petition Date. Proceeds from the 2nd Sale will then reduce the total.

19) Debtor also requests authority from this Court to pay the costs of sale that would normally be borne by a seller in a transaction like the sale of the Subject Property, including but not limited to title insurance, title company fees, and the like.

20) Debtor now requests an order of this Court that will approve the transactions set forth above, and asserts that the structure of the proposed deal is the only method to maximize the value of the Subject Property and guarantee the maximum return to NTB.

**WHEREFORE,** Debtor moves for an Order of this Court providing as follows:

(A) APPROVING AND AUTHORIZING the Debtor to execute and deliver all contracts, agreements, assignments, conveyances or other documents, including those listed in the Purchase Contract and to take such other action that may be necessary to perform the terms and provisions of that sale contract, to take such other action that may be necessary for the closing of the 1st Sale by the Debtor as set forth herein;

(B) APPROVING AND AUTHORIZING the Debtor to execute and deliver all contracts and to take such action as is necessary to ensure that the interest of the bankruptcy estate

will be protected until the time of the 2nd Sale and that the sale proceeds from the 2nd Sale be utilized as is set forth above in this Motion;

**(C)** AUTHORIZING Stewart Title to, upon close of escrow on the 1st Sale, pay over the sale proceeds in the following order:

1) Pay any real property tax debt that is due for the subject property;

2) Pay any homeowners association fees that are due from Debtor to the Cobblestone HOA and secured by a valid and enforceable lien against the Subject Property;

3) Pay the seller's costs of sale and other costs of closing customarily borne by a seller including, but not limited to, the payment of any real property tax due, or a pro rata portion of any real property tax about to come due, and convey said payment to the Pima County Treasurer; and

4) Pay the remaining sale proceeds to The Northern Trust Company, *dba* Northern Trust Bank.

**(D)** AUTHORIZING Stewart Title to record a Creditors Trust Deed, the proposed form of which will be attached to the Order approving this motion, in a form approved by NTB, as will be evidenced by the signature of NTB's counsel approving the proposed form of order, and

**(E)** Such other relief as the Court may deem appropriate in the circumstances.

Respectfully submitted this 4th day of September 2018.
MICHAEL BALDWIN, PLC;

By: /s/ Michael Baldwin   AzStB#12625
Michael W. Baldwin

Copy of the foregoing electronically transmitted this 4th day of September 2018, to the following:

```
Jennifer Giamo, Esq,
Office of the United States Trustee
    Jennifer.A.Giaimo@usdoj.gov
```

All parties who have filed a Notice of Appearance in this case

Once a hearing date/time has been obtained a Notice of Hearing will be filed, and the Notice of Hearing along with this Pleading will be mailed and or electronically transmitted to all parties on the Master Mailing List.

/s/ Michael Baldwin, PLC