**Michael Baldwin, PLC**
Michael Baldwin, State Bar No. 12625
12080 E 8th Street
Tucson, Arizona 85748-8903
Telephone: (520) 870-0709

**Engelman Berger, P.C.**
Bradley D. Pack, SBA #023973
3636 N. Central Ave., Suite 700
Phoenix, Arizona 85004
Telephone: (602)271-9090
bdp@eblawyers.com
Attorneys for Debtor and
Debtor-In-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| *In re:*<br><br>Skyline Ridge, LLC, an Arizona limited liability company,<br>Debtor.<br><br>3400 E Finger Rock Circle<br>Tucson AZ 85718,<br>EIN: 86-xxxx-4126 | Case No.: 4:18-bk-01908-BMW<br>(Chapter 11) |

**Debtor's Second Amended, Modified, and Restated Plan of Reorganization**

**Dated June 4, 2019**

# TABLE OF CONTENTS

Introduction ............................................................................................ 1

Article 1 - Definitions ........................................................................... 2

Article 2 - Classification Of Claims .................................................... 9

Article 3 - Treatment Of Claims And Interests ............................... 14

Article 4 - Implementation ................................................................. 25

Article 5 - Determination Of Claims ................................................. 27

Article 6 - Executory Contracts And Unexpired Leases ................. 28

Article 7 - Miscellaneous Plan Provisions....................................... 28

# **INTRODUCTION**

On September 27, 2018, Skyline Ridge, LLC, an Arizona limited liability company, debtor and debtor-in-possession ("**Debtor**"), filed its *Second Amended Chapter 11 Plan* (Dkt. 167) (the "**Second Amended Plan**"). Since the filing of the Second Amended Plan, Debtor has paid a substantial amount of its pre-petition secured debt, eliminating the need to classify and treat those creditors whose claims have been fully paid. Debtor has also stipulated with certain creditors for plan treatment that supersedes the treatment provided for those creditors in the Second Amended Plan.

The purpose of filing this *Second Amended, Modified, and Restated Chapter 11 Plan* (the "**Plan**") is to provide, in a single, comprehensive document, a plan of reorganization that reflects the deletion of classes of claims that have already been paid, and incorporates the stipulations for plan treatment referenced above. Additionally, this Plan: provides a mechanism for funding a reserve for the payment of any Disputed Claims; provides for Exit Financing on specific terms; provides for the appointing of a Disbursing Agent; makes clarifying revisions; expands upon the means of funding payments to creditors; and adds several technical amendments (such as retention of post-confirmation jurisdiction) that do not affect the treatment of claims or interests. Nothing in this Plan is intended to materially, adversely modify the treatment of any claims set forth in the Second Amended Plan unless the holder of such claim has expressly agreed in writing to such modification.

Debtor, through its undersigned attorneys, hereby submits this Plan pursuant to 11 U.S.C. § 1121 and requests confirmation of the Plan pursuant to 11 U.S.C. § 1129(a). Respecting any Class of Claims that is impaired and does not vote to accept

this Plan, or any Class of Claims or Interests that is deemed to have rejected this Plan, Debtor requests confirmation of this Plan pursuant to 11 U.S.C. § 1129(b).

## ARTICLE 1 - DEFINITIONS

**1.** Capitalized terms used in this Plan shall have the following meanings, unless otherwise defined.

1.1. **<u>Administrative Claim</u>** shall mean any costs or expenses of administration of this case which are entitled to priority pursuant to 11 U.S.C. § 507(a)(2) and allowed under 11 U.S.C. § 503(b), including, without limitation, any actual and necessary expenses of preserving the Debtor's estate, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under § 330 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

1.2. "**<u>Administrative Expense Claims Bar Date</u>**" shall mean the first Business Day after the 30th day after the Effective Date.

1.3. **<u>Allowed Claim</u>** or the **<u>Allowed Amount</u>** of a Claim shall mean or refer to every Claim or portion thereof, as the case may be: (a)(i) for which a Proof of Claim is filed within the time fixed by the Bankruptcy Court; or (ii) that has been, or hereafter is listed by the Debtors, liquidated in an amount and not disputed or contingent, and, in either event; (b)(i) to which no objection to the allowance thereof has been filed within the period fixed by the Bankruptcy Court with respect to this Plan, or (ii) as to which the order allowing such Claim has become a Final Order. Unless otherwise specified, an Allowed Claim shall not include any interest on the principal amount of such Claim maturing or accruing from and after the Petition Date.

1.4. **<u>Allowed Secured Claim</u>** shall mean the Allowed Amount of a Claim

secured by a lien, security interest, encumbrance or other charge against any interest in any property of the estate (as defined in 11 U.S.C. § 541), which lien, security interest, encumbrance or other charge is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, to the extent of the value of the interest of the holder of such Claim in such property as determined in accordance with 11 U.S.C. § 506(a) and (b); or an Allowed Claim for which the holder asserts a setoff under § 553 of the Code, to the extent of the value (which is either agreed to by the Debtor pursuant to the Plan, or in the absence of an agreement, has been determined in accordance with § 506(a) or § 1111(b) of the Code) of the interest of the holder of such Allowed Claim in the Estate's interest in such property; or an Allowed Claim that Debtor has agreed to treat as an Allowed Secured Claim pursuant to the Plan. That portion of such Allowed Claim exceeding the value of security held therefore shall be an Allowed Unsecured Claim unless otherwise modified by this Plan.

1.5. **<u>Allowed Unsecured Claim</u>**" shall mean the Allowed Amount of a Claim against the Debtor for which the claimant holds no security for the repayment thereof, and which is not an Administrative Claim, Priority Claim, or an Allowed Secured Claim. This definition may include claims as listed in Schedule "F" of Debtor's bankruptcy schedules only if: (a) such creditor/claimant has filed a Proof of Claim herein and filed such prior to the Claims Bar Date; or (b) the debt owed to such creditor is listed in Schedule "F" of Debtor's bankruptcy schedules for a specific amount and is not scheduled as disputed, contingent, or unliquidated.

1.6. **"<u>Attorneys' Fees / Rejection Claims Bar Date</u>"** shall mean the first Business Day after the 30th day after the Effective Date.

1.7. "**Bankruptcy Case**" or "**Case**" shall mean the pending Chapter 11 case of Debtor, Case No. 4:18-bk-01908-BMW.

1.8. "**Bankruptcy Court**" or "**Court**" shall mean the United States District Court for the District of Arizona, having jurisdiction over this Case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

1.9. "**Bankruptcy Estate**" or "**Estate**" shall mean the estate created pursuant to 11 U.S.C. § 541 upon the Debtor's filing of the Bankruptcy Case.

1.10. "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075.

1.11. "**Business Day**" shall mean a day of the year except a Saturday, Sunday, or legal holiday as defined in Bankruptcy Rule 9006.

1.12. "**Claim**" shall mean "Claim" as defined in Bankruptcy Code § 101(5).

1.13. "**Claims Bar Date**" shall mean: October 1, 2018, which is the deadline for filing proofs of claim as Ordered by the Bankruptcy Court.

1.14. "**Claims Objection Date**" shall mean the date by which the Debtor or any interested party must file objections to Claims (other than Administrative Claims or other Claims related to debts that accrued post-petition), which shall be the first Business Day after 30 days after the Effective Date.

1.15. "**Class**" shall mean each of the classifications of Claims and Interests described in the Plan. The Plan is intended to deal with all Claims against and all Interests in the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to § 502(h) of the Code. However, only those Claims that are Allowed pursuant to § 502(a) of the Code will receive

payment under the Plan.

1.16. "**Cinco Loan Documents**" means, collectively: the *Loan Agreement* dated July 21, 2006 between Debtor and Cinco; the promissory note dated July 21, 2006 in the original principal amount of $4,000,000, under which Debtor is the lender and Cinco is the borrower; the *Second Deed of Trust and Fixture Filing* dated July 21, 2006 and recorded in the Office of the Pima County Recorder on July 25, 2006 at Docket No. 12853, Page No. 4268; and any amendments to the foregoing.

1.17. "**Cinco Soldados**" means Cinco Soldados, LLC, an Arizona limited liability company.

1.18. "**Code**" shall mean: The United States Bankruptcy Code, as codified in Title 11 of the United States Code, and all amendments thereto that were enacted by Congress and effective as of the Petition Date.

1.19. "**Confirmation Order**" shall mean an Order of this Court confirming the Plan at or after a hearing held pursuant to § 1128 of the Code.

1.20. "**Debtor**" shall mean Skyline Ridge, LLC, the debtor and debtor-in-possession in this Bankruptcy Case.

1.21. "**Disbursing Agent**" shall mean the person or entity responsible for making payments under the Plan. The Disbursing Agent shall be a third-party fiduciary whose appointment shall be approved by the Court. Debtor has filed a motion to appoint Christopher Linscott of Keegan, Linscott, & Kenon, P.C. as the Disbursing Agent (Dkt. 314). Mr. Linscott shall serve as the Disbursing Agent unless: (a) the Court declines to approve his appointment; or (b) Debtor withdraws its motion to appoint Mr. Linscott as the Disbursing Agent prior to the hearing on confirmation of this Plan and seeks approval to appoint a different person or entity as the Disbursing Agent.

1.22. **"Disputed Claim"** shall mean every Claim that is not an Allowed Claim.

1.23. **"Disputed Claim Reserve Account"** means a segregated, interest bearing account maintained and administered by the Debtor for the purpose of holding cash for distribution on account of Disputed Claims pursuant to this Plan.

1.24. **"Effective Date"** shall mean the first (1st) Business Day following the date on which the Confirmation Order has become a Final Order.

1.25. **"Equity Interests"** or **"Interests"** shall mean the equity interests in the Debtor held by Ahmad N. Zarifi, a married man owning such Equity Interests as his sole and separate property.

1.26. **"Estate Assets"** shall mean all of the property in the Bankruptcy Estate on the Petition Date as defined by 11 U.S.C. § 541(a), and all property of the kind specified in section 541 that the Debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first; and all earnings from services performed by the Debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first.

1.27. **"Exit Financing"** shall mean the line of credit from Will Power Properties, LLC to Debtor described in Section 4.2 of this Plan.

1.28. **"Final Order"** shall mean an order or judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended, and as to which the time to appeal from or to seek review or rehearing of, shall have expired, and as to which no appeal or petition for review, or rehearing is pending, or if appealed from, shall have been affirmed and no further hearing, appeal or petition can be taken or granted, or as to which no stay has been entered to affect the operative provisions of

such order of judgment.

1.29. "**General Unsecured Claimants**" shall mean the Claims held by those persons, corporations, partnerships, or other entities, which prior to the Petition Date, extended credit, lent money, furnished goods on open account, placed goods, product or inventory on consignment, "leased" equipment or software to the Debtor under a lease that is in fact a secured transaction and for which the creditor did not perfect their security interest in collateral, or who hold an Allowed Claim against the Debtor for a tort or breach of contract, to the extent such claim is not an Allowed Secured Claim or entitled to a priority under 11 U.S.C. § 507(a)---including but not limited to the following:

1.29.1. the claims alleged by the adverse parties in the adversary matters filed against the Debtor in Adversary No. 4:16-ap-00512-SHG, *Trudy A. Nowak, Chapter 7 Trustee, v Skyline Ridge, LLC;*

1.29.2. any debt that is the subject of the state court litigation in Pima County Superior Court Case No. C2017-3398, *Skyline Ridge, LLC, v Earth's Healing, Inc., an Arizona corporation; and Victoria Puchi-Saavedra*;

1.29.3. all claims asserted by David Parri against Debtor in Pima County Superior Court Case No. C20131920 relating to alleged violations of the charging order against Ahmad Zarifi's membership interest in Debtor; and

1.29.4. the claims of any secured creditor, to the extent such creditor's Claim exceeds the value of its interest in the Bankruptcy Estate's interest in property securing such creditor's claim as provided under § 506(a) of the Code.

1.30. "**Insider**" shall have the meaning ascribed in § 101(31) of the Code.

1.31. "**Net Litigation Proceeds**" shall mean, with respect to any cause of action prosecuted by the Debtor against another entity, the total amount of money actually received by the Debtor on account of the prosecution of such cause of action, whether as the result of the enforcement of a final, appealable judgment or a settlement of the Debtor's claims.

1.32. "**Petition Date**" shall mean March 1, 2018, the date that the Debtor filed its petition for relief commencing this bankruptcy case, as originally filed under Chapter 11.

1.33. "**Plan**" shall mean this Plan filed on behalf of the Debtor and any and all modifications, supplements, or amendments thereto.

1.34. "**Plan Rate**" shall mean an annual rate of interest equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Effective Date, or such other rate of interest as the Bankruptcy Court determines to be necessary to satisfy any requirements for confirmation.

1.35. "**Plan Term**" shall mean the period of time in which all payments to all creditors shall be disbursed. The Plan Term shall be no longer than six (6) years from the Effective Date, when the last payment to any creditor will have been paid in full.

1.36. "**Secured Claims**" shall mean: Any Claims secured by Property of the Debtor under a duly perfected security interest or lien, to the extent of and up to the value of that creditor's collateral or security, as determined in accordance with § 506 of the Code.

1.37. "**Secured Creditor**" shall mean: Any Creditor that holds a lien, security interest or other encumbrance which has been properly perfected as required by law

with respect to Property of the Debtor, and which has not at the time of hearing on the confirmation of the Plan sold all of its collateral.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS

**2.**     The Allowed Claims of the creditors of the estate and the Equity Interests shall be classified as follows. All Claims and the Interests are classified under this Plan as set forth in this Article. At the time of the confirmation hearing, any Class that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by Bankruptcy Court for voting purposes) will be deleted from this Plan with respect to voting on confirmation of this Plan.

### 2.1     Class 1 (Administrative Claims):

This Class shall consist of every Allowed Unsecured Claim that is entitled to Administrative Priority under Section 507(a)(2) and Section 503(b) of the Bankruptcy Code. Unless agreed otherwise, Administrative Priority Claims shall be paid in compliance with the provisions of the Code. No payment will be made by the Debtor to a Class 1 Claim on the Effective Date except to a party that holds an Allowed Administrative Expense Claim.

### 2.2     Class 2 (Real Property Tax Claims):

This Class shall consist of all Allowed Secured Claims arising out of all real property tax liens against the Debtor's real property that accrued prior to the Petition Date, including such Claims that have been sold or assigned by the taxing authority to other persons pursuant to a Certificate of Purchase pursuant to applicable non-bankruptcy law. Debtor believes that all Claims in this Class have been paid in full, and therefore there will be no Allowed Claims remaining in this class.

### 2.3 **Class 3 (Hidden Valley 80, LLC Pre-Petition Tax Claims):**

This Class formerly consisted of claims for real property taxes assessed pre-petition against the real property owned by Hidden Valley 80, LLC. All claims in this Class have been paid in full. While the Class has been retained in this Plan for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation and is not treated under this Plan.

### 2.4 **Class 4 (Northern Trust Company Secured Claim):**

This Class formerly consisted of the allowed secured claim held by the Northern Trust Company, which has since been paid in full. Northern Trust Company has withdrawn its Claim (Dkt. 255). While the Class has been retained in this Plan for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation and is not treated under this Plan

### 2.5 **Class 5 (Fotinos Properties Secured Claim re: 6555 N. Turnberry Dr.):**

This Class formerly consisted of the Allowed Secured Claim held by Fotinos Properties, LLC, which was secured by a deed of trust on real property located at 6555 N Turnberry Dr, Tucson, AZ 85718. That property was sold post-petition, and the claims in this Class were paid in full out of the proceeds of the sale. While the Class has been retained in this Plan for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation and is not treated under this Plan.

### 2.6 **Class 6 (Fotinos Properties Secured Claim re: Oracle & Hardy):**

This Class shall consist of the Allowed Secured Claim held by Fotinos Properties, LLC that is secured by two parcels of real property owned by the Debtor -- approximately 9.2 acres, located near Oracle & Hardy Roads, in Oro Valley, Arizona

(no address has been assigned), and generally known as Pima Co. Tax # 225-13-003B and also secured by an additional adjacent property of approximately 4.79 acres (no address assigned) and generally known as Pima Co. Tax # 225-13-009A (collectively referred to as the "**Fotinos Collateral**") -- and by a third parcel of real estate (Lot 10 of The Enclave at Gates Pass) that is not owned by Debtor.

### 2.7    Class 7 (Rallis Group Secured Claim):

This Class shall consist of the Allowed Secured Claim held by the group of creditors identified collectively as the "**Rallis Creditors**" in the *Stipulation between the Debtor and Rallis Creditors Allowing Claim and Modifying Plan Treatment of Class 7 Claim* filed at Dkt. 283 arising out of a loan from the Rallis Creditors to the Debtor in the original principal sum of approximately $485,000, which claim is secured by a deed of trust on Debtor's real property recorded in the Office of the Pima County Recorder on February 12, 2014, at sequence No. 20140430301, (the "**Rallis Deed of Trust**"). The Rallis Deed of Trust previously encumbered four parcels, three of which have been sold. The property remaining encumbered by the Rallis Deed of Trust is a 3.72 Acre parcel of vacant land at Oracle and Hardy (the "**Rallis Collateral**").

### 2.8    Class 8 (La Reserve Community Association / Skyline Country Club Estates Improvement Association Secured Claims):

This Class shall consist of the Claims held by: (a) the La Reserve Community Association ("**La Reserve**"), whose Claim was filed at Claim Register No. 28 (as amended); and (b) the Skyline Country Club Estates Improvement Association ("**Skyline CCE**"), whose Claim was filed at Claim Register No. 26. La Reserve's Claim is secured by a lien on a parcel of property owned by the Debtor, 10181 N Alder Spring Drive Tucson AZ 85718, Pima County Tax # 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 (the "**La Reserve**

Collateral"). It was also previously secured by a lien on the real property located at 10085 N. Alder Spring Drive, which property was sold after the Petition Date and a payment was made out of the sale proceeds to La Reserve in partial satisfaction of its Claim. Skyline CCE's Claim is secured by a lien on a parcel of property owned by the Debtor, located at 5172 East Calle Brillante, Tucson, AZ 85718 (the "**Skyline CCE Collateral**").

### 2.9    Class 9 (France Terrace HOA Claim):

This Class shall consist of the Allowed Secured Claim held by Elevens, LLC, as assignee of France Terrace Homeowners Association ("**FTHOA**"), whose Claim was filed at Claim Register No. 2, which is secured by a lien on two parcels of the Debtor's real property: 140 E Pastime Road Tucson, AZ 85705 (Pima County Tax # 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) and 144 E Pastime Road Tucson, AZ 85705 (Pima County Tax # 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) (collectively, the "**FTHOA Collateral**"). Both of these properties are currently listed for sale.

### 2.10    Class 10 (Cobblestone Homeowners' Association):

This Class formerly consisted of the Allowed Secured Claim held by Cobblestone Homeowners' Association, which was secured by a deed of trust on real property located at 7431 N Cobblestone, Tucson AZ 85718. That property was sold post-petition, and the claims in this Class were paid in full out of the proceeds of the sale. While the Class has been retained in this Plan for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation and is not treated under this Plan.

### 2.11    Class 11 (Rejection Damages Claims):

This Class shall consist of all Allowed Claims for damages under 11 USC § 365,

pertaining to the rejection of an unexpired lease or rejection of an executory contract.

### 2.12 Class 12 (Administrative Convenience Class):

This Class formerly consisted of every Allowed Unsecured Claim held by any party that is not an Insider and whose Allowed Unsecured Claim totals $1,000.00 or less, which voted to accept the Second Amended Plan and to be treated as a Class 12 creditor. There are no timely filed unsecured Claims of $1,000 or less, and no creditors timely served ballots electing to be treated as a Class 12 creditor. While the Class has been retained in this Plan for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation and is not treated under this Plan.

### 2.13 Class 13 (Trustee of RL Ventures, LLC):

This Class formerly consisted of the Claim of Trudy Nowak, as Chapter 7 trustee of the bankruptcy estate of RL Ventures, LLC ("**RL Trustee**"). The Second Amended Plan gave RL Trustee the option to settle her claims against Debtor for payment of $25,000 by returning a ballot accepting the Second Amended Plan. RL Trustee did not accept the Second Amended Plan and filed an objection to confirmation, indicating it would not agree to such a settlement. Accordingly, the Claim of RL Trustee will no longer be separately classified under this Plan. While this Class has been retained for the sake of consistency with the Second Amended Plan, this Class will be deleted upon confirmation. The Claim of RL Trustee will be classified in Class 14, along with the Claims of other General Unsecured Creditors.

### 2.14 Class 14 (Non-Insider General Unsecured Claims):

This Class shall consist of all Allowed General Unsecured Claims held by persons that are not "insiders" as defined in 11 U.S.C. §101(31).

### 2.15 Class 15 (Insider Unsecured Claims):

This Class shall consist of all Allowed Unsecured Claims held by creditors that are "insiders" as defined in 11 U.S.C. §101(31).

**2.16   Class 16 (Ahmad Zarifi Membership Interests):**

This Class shall consist of the Equity Interests in the Debtor held by Ahmad N. Zarifi.

## ARTICLE 3 - TREATMENT OF CLAIMS AND INTERESTS

**3.**     The following is the description of the treatment proposed for the Allowed Claims by each Class of Creditors, Equity Interests, and holders of Administrative Expense Claims of this Estate as classified in this Plan. This Plan is intended to treat all Claims against the Estate of whatever character, whether or not contingent or liquidated, and whether or not Allowed by the Court pursuant to Bankruptcy Code § 502(h). However, **only those Claims that are Allowed Claims under this Plan will receive distributions under this Plan.**

3.1.    **Class 1 (Administrative Claims):** Class 1 Allowed Administrative Expense Claims shall be paid in full on the later of: (1) the Effective Date; (2) the date on which such Claim becomes an Allowed Claim; (3) the date that payment of such Allowed Claim is due under ordinary business terms or applicable non-bankruptcy law; or (4) such later date as is agreed to by Debtor and the holder of such Allowed Claim. Payment shall be made from any funds or property of the Bankruptcy Estate available on the date payment comes due.

3.1.1.  Class 1 Claims are **not impaired.**

3.2.    **Class 2 (Real Property Tax Claims)**. Debtor believes that all Claims in this Class have been paid in full. Therefore, unless there are asserted any Claims

unknown to Debtor that would otherwise be classified in Class 2, this Class will be deleted upon confirmation of the Plan.

3.2.1. To the extent there are any Allowed Claims in Class 2, all interest, costs, pre-petition attorneys' fees, and the principal balance of such Allowed Claim, shall all be combined into what will be the total sum due on account of such Allowed Claim of the Effective Date (the "**Class 2 New Principal Balance**").

3.2.2. In the event the holder of such Allowed Claim files an application to approve any of its post-petition attorneys' fees or costs, then the amount of such fees or costs that are approved and allowed by the Court shall be added to the Class 2 New Principal Balance.

3.2.3. Interest shall accrue on the Allowed Claims in Class 2 at the rate specified by applicable non-bankruptcy law. Debtor shall make equal, amortized monthly payments to the holder of each Allowed Claim in Class Two based upon a five year amortization schedule, The first monthly payment shall be due 30 days after the Effective Date, and all subsequent payments shall be due on the same day of each month thereafter. If not sooner paid, each Allowed Claim in Class 2 shall be paid in full within five years from the Effective Date. Notwithstanding the foregoing, in the event the real property to which an Allowed Claim in Class 2 is sold, the entire remaining balance of such Allowed Claim shall be paid upon the closing of the sale of such property, out of the net proceeds of the sale.

3.2.4. Notwithstanding any provision in state law that may be to the contrary, holders of Class 2 Allowed Secured Claims shall not have a right to pursue a judicial foreclosure of the lien securing such claim so long as the Debtor is in compliance with the terms of the Plan.

3.2.5. Upon confirmation of the Plan, any alleged default that occurred prior to confirmation shall be deemed cured, and the holders of Class 2 Allowed Secured Claims shall be barred from asserting any rights or remedies arising out of alleged defaults that occurred prior to the Effective Date.

3.2.6. Class 2 Claims are **__impaired__** pursuant to this Plan.

3.3. **__Class 3 (Hidden Valley 80, LLC Pre-Petition Tax Claims):__** All Claims in this Class have been paid in full. Therefore, this Class will be deleted upon confirmation of the Plan.

3.4. **__Class 4 (Northern Trust Company Secured Claim):__** All Claims in this Class have been paid in full. Therefore, this Class will be deleted upon confirmation of the Plan.

3.5. **__Class 5 (Fotinos Properties Secured Claim re: 6555 N. Turnberry Dr.)__**: All Claims in this Class have been paid in full. Therefore, this Class will be deleted upon confirmation of the Plan.

3.6. **__Class 6 (Fotinos Properties Secured Claim re: Oracle & Hardy)__**: On February 21, 2019, Debtor and Fotinos Properties, LLC, the holder of the Class 6 Allowed Secured Claim, filed a *Stipulation between the Debtor and Fotinos Properties, LLC regarding Treatment of Fotinos' Secured Claim against the Debtor, and acceptance of Debtor's Plan of Reorganization* (Dkt. 267) (the "**Fotinos Claim Stipulation**"). The Fotinos Claim Stipulation is incorporated herein, and shall control

the treatment of the Class 6 Allowed Secured claim. In the event of any inconsistency between the Fotinos Claim Stipulation and this Plan, the Fotinos Claim Stipulation shall control.

3.6.1. In general, and without limiting or modifying the treatment provided in the Fotinos Claim Stipulation, the Class 6 Allowed Secured Claim shall be allowed as a secured claim in the principal amount of: (a) $575,000; plus (b) any attorneys' fees and costs incurred after the Petition Date to the extent allowed by the Court after written application for the approval of such fees and costs filed by and Fotinos Properties, LLC. The Class 6 Allowed Secured Claim will remain secured by Fotinos Properties, LLC's lien on the Fotinos Collateral and Lot 10 of The Enclave at Gates Pass until paid in full pursuant to the Fotinos Claim Stipulation. The Class 6 Allowed Secured Claim shall be payable as follows:

3.6.1.1. Following the Effective Date, interest shall accrue on the Class 6 Allowed Secured Claim at the rate of 6.0% per annum until paid in full.

3.6.1.2. Debtor shall pay the sum of $250,000 within three (3) Business Days after the Effective Date.

3.6.1.3. Debtor shall make monthly interest-only payments in the amount of $1,625, with the first such payment due 30 calendar days after the Effective Date.

3.6.1.4. If not sooner paid, the remaining balance of the Class 6 Allowed Secured Claim shall be paid within one year from the Effective Date.

3.6.2. In the event the Fotinos Collateral is sold prior to one year from the

Effective Date, then the remaining balance of the Class 6 Allowed Secured Claim shall be paid upon closing of the sale, from the proceeds of such sale.

3.6.3.  Class 6 Claims are **_impaired_** under this Plan.

3.7.   **Class 7 (Rallis Group Secured Claim):** On February 21, 2019, Debtor and the Rallis Creditors, the holders of the Class 7 Allowed Secured Claim, filed a _Stipulation between the Debtor and Rallis Creditors Allowing Claim and Modifying Plan Treatment of Class 7 Claim_ (Dkt. 283) (the "**Rallis Claim Stipulation**"). The Rallis Claim Stipulation is incorporated herein, and shall control the treatment of the Class 7 Allowed Secured claim. In the event of any inconsistency between the Rallis Claim Stipulation and this Plan, the Rallis Claim Stipulation shall control.

3.7.1. In general, and without limiting or modifying the treatment provided in the Rallis Claim Stipulation, the Class 7 Allowed Secured Claim shall be allowed as a secured claim in the principal amount of $154,513.85, plus all of the Rallis Creditors' attorney's fees incurred in connection with the instant bankruptcy case between 10/24/2018 and the Effective Date. The Class 7 Allowed Secured Claim will remain secured by the Rallis Creditors' lien on the Rallis Collateral until paid in full pursuant to the Rallis Claim Stipulation. The Class 7 Allowed Secured Claim shall be payable as follows:

3.7.1.1.   Following the Effective Date, interest shall accrue on the Class 7 Allowed Secured Claim at the rate of 12.0% per annum.

3.7.1.2.   On the Effective Date, Debtor shall pay: (a) all of the Rallis Creditors' attorney's fees incurred in connection with the instant bankruptcy case between 10/24/2018 and the Effective Date; plus (b)

one-half of the remaining balance of the Class 7 Allowed Secured Claim.

        3.7.1.3.   Debtor shall make monthly interest-only payments to the holder of the Class 7 Allowed Secured Claim, with the first such payment due 30 calendar days after the Effective Date.

        3.7.1.4.   If not sooner paid, the remaining balance of the Class 7 Allowed Secured Claim shall be paid within six months from the Effective Date.

3.7.2.  Class 7 Claims are **<u>impaired</u>** under this Plan.


3.8.    **<u>Class 8 (La Reserve Community Association / Skyline Country Club Estates Improvement Association Secured Claims):</u>**

3.8.1.  On March 6, 2019, Debtor and the holders of the Class 8 Allowed Secured Claims, filed a *Stipulation and Plan Modification Concerning Homeowners Association Claims* (the "**HOA Claims Stipulation**"). The HOA Claims Stipulation is incorporated herein, and shall control the treatment of the Class 8 Allowed Secured claims. In the event of any inconsistency between the HOA Claim Stipulation and this Plan, the HOA Claims Stipulation shall control.

3.8.2.  La Reserve shall have an Allowed Secured Claim, on account of its lien on the La Reserve Collateral, in the amount of $4,953.97, plus post-confirmation interest at the rate of 12% per annum, plus any post-petition legal fees and costs awarded by the Court. The full amount of La Reserve's Allowed Secured Claim shall be paid in full on the Effective Date. To the extent there are any unpaid post-petition assessments owed to La Reserve,

nothing in this Plan shall preclude La Reserve from seeking an Administrative Claim for such assessments and any related attorneys' fees, costs, charges, or interest.

3.8.3.  Skyline CCE shall have an Allowed Secured Claim, on account of its lien on the Skyline CCE Collateral, in the amount of $3,378.73, plus post-confirmation interest at the rate of 12% per annum, plus any post-petition legal fees and costs awarded by the Court. The full amount of Skyline CCE's Allowed Secured Claim shall be paid in full on the Effective Date. To the extent there are any unpaid post-petition assessments owed to Skyline CCE, nothing in this Plan shall preclude Skyline CCE from seeking an Administrative Claim for such assessments and any related attorneys' fees, costs, charges, or interest.

3.8.4. Notwithstanding any provision to the contrary in the Covenants, Conditions & Restrictions for the La Reserve Community Association, the Declaration of Restrictions for Skyline Country Club Estates, or any other agreement between Debtor and the holders of Class 8 Claims, neither the fact that Debtor filed a bankruptcy petition, nor the fact that the Debtor listed the indebtedness owed to the holders of the Class 8 Claims in its bankruptcy schedules, reorganization plan, or other court documents will be grounds for a declaration of default by the holder of the Class 8 Claims.

3.8.5. Upon the Effective Date, any alleged default that occurred prior to the Effective Date shall be deemed cured, and as of the Effective Date, the holders of the Class 8 Claims shall be barred from enforcing any rights or remedies arising out of any alleged default that occurred prior to the

Effective Date.

3.8.6.  Class 8 Claims are **<u>impaired</u>** under this Plan.

3.9.    **<u>Class 9 (France Terrace HOA Secured Claim)</u>**: The holder of the Class 9 Allowed Secured Claim shall be entitled to all applicable pre-petition interest on its Allowed Claim, but shall not be entitled to payment of any penalties. The Class 9 Allowed Secured Claim shall remain secured by the FTHOA Collateral. The Class 9 Allowed Secured Claim shall be treated as follows:

3.9.1.  As of the Effective Date, all interest, costs, pre-petition attorneys' fees, and the principal balance of the of the Class 9 Allowed Secured Claim shall all be combined into what will be the total sum due to the holder of the Class 9 Allowed Secured Claim (the "**Class 9 New Principal Balance**"). The Class 9 New Principal Balance will be paid in full from the sale of the FTHOA Collateral.

3.9.2.  If the FTHOA Collateral has not sold by the Effective Date, 50% of the New Principal Balance will be paid on the Effective Date. Debtor will make monthly interest-only payments on the remaining balance at the Class 9 Allowed Secured Claim at the rate of 6% per annum, with the first such payment due 30 days from the Effective Date. If not sooner paid, the remaining balance of the Class 9 Allowed Secured Claim shall be paid in full within six months of the Effective Date.

3.9.3.  In the event that FTHOA files an application to approve any of its post-petition attorneys' fees and costs, then to the extent such fees and/or costs are allowed by the Court, they will be added to the Class 9 New Principal

Balance.

3.9.4. Notwithstanding any provision to the contrary in the Covenants, Conditions & Restrictions for FTHOA or any other agreement between Debtor and FTHOA, neither the fact that Debtor filed a bankruptcy petition, or the fact that the Debtor listed the indebtedness owed to the FTHOA in its bankruptcy schedules, reorganization plan, or other court documents will be grounds for a declaration of default by the holder of the Class 9 Allowed Secured Claim.

3.9.5. Upon the Effective Date, any alleged default that occurred prior to the Effective Date shall be deemed cured, and as of the Effective Date, the holder of the Class 9 Allowed Secured Claim shall be barred from enforcing any rights or remedies arising out of any alleged default that occurred prior to the Effective Date.

3.9.6. Class 9 Claims are **<u>impaired</u>** under this Plan.

3.10.  **<u>Class 10 (Cobblestone Homeowners' Association):</u>** All Claims in this Class have been paid in full. Therefore, this Class will be deleted upon confirmation of the Plan.

3.11.  **<u>Class 11 (Rejection Damages Claims):</u>** Debtor does not believe there are any Claims in this Class. Therefore, this Class will be deleted upon confirmation of the Plan. However, to the extent there are any Allowed Claims in this Class, they shall be treated as follows:

3.11.1. All Claims resulting from the rejection of a prepetition executory contract

or unexpired lease shall be filed, in form required for a proof of claim, **within <u>thirty (30) days</u> after the Effective Date** or such Claims are waived and deemed not Allowed. All objections to such Claims shall be filed **within <u>sixty (60) days</u> after the Effective Date**.

3.11.2. The Allowed Claim shall be paid in full, with interest from the Effective Date forward at the Plan Rate, on the date that is 90 days from the Effective Date.

3.11.3. The Class 7 claim(s) are **<u>impaired</u>** pursuant to this Plan.

3.12. **<u>Class 12 (Administrative Convenience Claims):</u>** There are no timely filed Claims in this Class, and no creditor elected to be treated as a Class 12 creditor. Therefore, this Class will be deleted upon confirmation of the Plan.

3.13. **<u>Class 13 (Trustee of RL Ventures, LLC):</u>** The RL Trustee did not elect the settlement proposed under the Second Amended Plan, which would have resulted in her classification as a Class 13 creditor. Accordingly, this Class will be deleted upon confirmation, and the Claim of the RL Trustee will be classified in Class 14, along with the Claims of other General Unsecured Creditors.

3.14. **<u>Class 14 (Non-Insider General Unsecured Claims):</u>** All Class 14 Allowed Claims shall be treated as follows:

3.14.1. Each Class 14 Allowed Claim shall accrue interest from the Effective Date until paid in full at the Plan Rate.

3.14.2. The holders of Class 14 Allowed Claims shall begin receiving payments

under the Plan upon the earliest to occur of the following (the "**Class 14 Commencement Date**"): (a) payment in full of all Allowed Claims in Classes 1 through 13 (inclusive); or (b) one year after the Effective Date.

3.14.3.Class 14 Allowed Claims shall be paid in equal monthly, amortized payments based upon a 36 month amortization schedule, with the first such payment due upon the Commencement Date and all subsequent payments due on the same day of each month thereafter.

3.14.4.At the discretion of the Disbursing Agent, to the extent Debtor has sufficient liquid assets on the Class 14 Commencement Date or at any time thereafter to prepay the Allowed Class 14 Claims, and such prepayment would not prejudice the holders of Allowed Claims in Class 15, Debtor may (but shall not be required to) prepay the Allowed Class 14 Claims without penalty.

3.14.5.The Class 14 Allowed Claims are **impaired** under this Plan.

3.15.  **Class 15 (Insider Unsecured Claim)**: Class 15 Allowed Claims shall be treated as follows:

3.15.1.Each Class 15 Allowed Claim shall accrue interest from the Effective Date until paid in full at the Plan Rate.

3.15.2.The holders of Class 15 Allowed Claims shall begin receiving payments under the Plan upon the earliest to occur of the following (the "**Class 15 Commencement Date**"): (a) payment in full of all Allowed Claims in Classes 1 through 14 (inclusive); or (b) five years after the Effective Date.

3.15.3.Upon the Class 15 Commencement Date, the Class 15 Allowed Claims shall be paid in full.

3.15.4. The Class 15 Allowed Claims are **impaired** pursuant to this Plan.

3.16. **Class 16 (Equity Interest)**. The holder of the Class 16 Equity Interest shall retain his membership interest in Debtor, but shall not receive any distributions or payments on account of such Equity Interest until all Allowed Claims in Classes 1 through 15 (inclusive) of this Plan have been paid in full.

## <u>ARTICLE 4 - IMPLEMENTATION</u>

4. **Implementation:** The Plan shall be implemented as follows.

4.1. **Funding.** Funding for this Plan may come from any or all of the following sources: (i) cash on hand as of the Effective Date; (ii) the proceeds from the post-Effective Date sale of any real property owned by the Debtor, less reasonable and customary closing costs and any amounts necessary to satisfy liens or encumbrances on the property that is the subject of such sale; (iii) the proceeds of the Exit Financing; (iv) all proceeds received by Debtor after the Effective Date on account of the Cinco Loan Documents; (v) the Net Litigation Proceeds with respect to the prosecution or settlement of Debtor's affirmative claims for relief against *Skyline Ridge, LLC v. Earth's Healing, Inc.,* et al., Pima County Superior Court Case No. C20173398 (the "**Earth's Healing Claim**"), or from any affirmative claims for relief accruing on or after the Petition Date; and (vi) any other money available (new or otherwise) to Debtor that Debtor, in the exercise of its sole and absolute discretion, determines to contribute.

4.2. **Exit Loan**. On the Effective Date, Will Power Properties, LLC ("Will Power") shall make available to Debtor a line of credit facility in the maximum principal amount of $400,000 available to Debtor to fund any payments required under

Case 4:18-bk-01908-BMW    Doc 399    Filed 06/04/19    Entered 06/04/19 23:52:50    Desc
Main Document    Page 27 of 35

the Plan for which funds are not otherwise readily available to Debtor. Funding shall be provided in two tranches: (a) on the Effective Date, Will Power will immediately make available for lending to Debtor the principal amount of up to $200,000; and (b) on January 1, 2020, Will Power will make available for lending to Debtor an additional $200,000. All funds loaned to Debtor shall bear interest at the rate of 6% per annum from the date such funds are advanced, and shall be repaid only after all Allowed Claims classified in this Plan have been paid in full. Additional terms and conditions of the Exit Financing consistent with the provisions of this Plan shall be set forth in a promissory note in a form to be filed with the Court on or before the date set for the confirmation hearing.

4.3. **Reserve for Operations and Payment of Expenses.** Debtor shall be permitted to reserve and use capital to fund its ordinary operations, including the marketing and sale of its remaining assets and the employment of professionals necessary to the conduct of Debtor's business operations and the effectuation of this Plan. Debtor's expenses include home office expenses that have been expensed by the Debtor on its federal and state income taxes, and approved after audit by the I.R.S., for the maintenance of a home office used by Debtor's principal Ahmad Zarifi. The I.R.S. allows 70% of the home mortgage payment of $11,639 to be expensed. Subject to Court approval, Debtor will make these payments of approximately $8,150 per month (70% of the total) following confirmation of the Plan.

4.4. **Vesting of Assets**. Unless otherwise provided in this Plan, upon the Effective Date, all Estate Assets shall immediately re-vest in the Debtor.

## ARTICLE 5 - DETERMINATION OF CLAIMS

**5.**     Claims shall be determined in accordance with the following provisions.

5.1.     **Objection to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date or as otherwise provided for herein, Debtor, any creditor, and any other party-in-interest may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in Bankruptcy Court on or before the Claims Objection Date. If proof of a Claim has been timely filed before expiration of the General Claims Bar Date, and no objection has been timely filed, the Claim shall be Allowed. Additionally, if a Claim is listed in the Debtor's bankruptcy schedules for a specific amount, and the claims is not scheduled as contingent, unliquidated, or disputed, and no objection has been timely filed, the Claim shall be Allowed.

5.2.     **Distributions on Disputed Claims.** No payments or distributions will be made to Creditors unless and until their Claims are Allowed Claims. However, Debtor shall establish the Disputed Claim Reserve Account as soon as practicable after the Effective Date. At the time a payment would otherwise be due and payable under this Plan to the holder of a Disputed Claim if such claim were Allowed, Debtor shall deposit into the Disputed Claim Reserve cash in such amount as the Disbursing Agent reasonably determines is necessary to enable Debtor to make the payment that will be required to be made to the holder(s) of such Disputed Claims if, and to the extent, the claim is Allowed. Upon the entry of a Final Order allowing a Disputed Claim, payment will be made, in accordance with the provisions of this Plan, to the holder of such Claim to the extent of the Allowed Amount of the Claim.

5.3.      **Settlement of Disputed Claims**. Debtor shall have the discretion to settle any Disputed Claims, the Earth's Healing Claim, and any claims arising out of or related to the Cinco Loan Documents on such terms as it determines in the exercise of its reasonable business judgment to be fair and appropriate, subject to the entry of an order of this Court approving the settlement pursuant to Bankruptcy Rule 9019. Any motion for approval of such a settlement may be filed on a 21-day negative notice procedure pursuant to Local Rule of Bankruptcy Procedure 9013-1(k). Only the Debtor may file a motion for approval of such a settlement, although other parties-in-interest may join in a request for approval of such a settlement filed by the Debtor.

## ARTICLE 6 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.**      All unexpired leases and executory contracts shall be deemed rejected as of the Effective Date, except: (1) any unexpired leases or executory contracts previously assumed or rejected, or deemed rejected as a result of Debtor's failure to timely assume within the time otherwise required by the Bankruptcy Code; or (2) as set forth in the Confirmation Order. Upon entry of the Confirmation Order, all defaults under such assumed executory contracts shall be deemed cured or to be cured within a reasonable time, and the Debtor shall be deemed to have been provided adequate assurance of future performance under the terms of this Plan.

## ARTICLE 7 – MISCELLANEOUS PLAN PROVISIONS

**7.**      The following are miscellaneous provisions of the Plan.

7.1.      **Administrative Expense Claims Bar Date.** Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order will operate to set a bar date for filing

applications for Administrative Expense Claims, which shall be the Administrative Expense Claims Bar Date. Creditors holding Administrative Expense Claims against the Estate must submit proofs of Claim or applications for payment on or before such Administrative Expense Claims Bar Date. Parties-in-interest will have 30 days after the Administrative Expense Claims Bar Date to review and object to such Claims.

7.2. **Attorneys' Fees / Rejection Claims Bar Date.** Unless otherwise ordered by Bankruptcy Court, the Confirmation Order will operate to set a bar date for filing: (a) applications for post-petition attorneys' fees and expenses by the holders of Claims permitted to seek an award of such fees and expenses under this Plan; or (b) Claims for damages arising out of the rejection of an executory contract or unexpired lease classified under Class 11 of this Plan, which shall be the Attorneys' Fees / Rejection Claims Bar Date. Creditors holding such Claims must submit proofs of Claim or applications for payment on or before such Attorneys' Fees / Rejection Claims Bar Date. Parties-in-interest will have until 60 days after the Effective Date to review and object to such Claims.

7.3. **Disbursing Agent.** Any payments made to the holders of Allowed Claims shall be made by the Disbursing Agent when such payments come due and funds are available for distribution. The Disbursing Agent shall be entitled to compensation for its services at its normal and customary rates. In addition to the powers and authority provided under this Plan, the Disbursing Agent shall have such additional rights, powers, and authority the Bankruptcy Court deems necessary to ensure the proper implementation of this Plan or to protect the rights and interests of creditors and equity security holders under this Plan.

7.4.   **Unclaimed Funds.** In the event any distribution made hereunder is the subject of a check that has not been negotiated, a delivery that has been returned, or is otherwise unclaimed, then the Disbursing Agent shall make a reasonable effort to locate the affected claimant. If not resolved within 60 days from the Disbursing Agent's receipt of the returned item, the Disbursing Agent may, after 20 days' notice to creditors and interested parties requesting notice after the Effective Date, reallocate the unclaimed distribution pursuant to the Claim priorities under the Plan.

7.5.   **Confirmation Order.** In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify transactions consistent with the provisions of the Plan effected by the Debtor during the periods commencing on the Filing Date and ending on the Effective Date.

7.6.   **United States Trustee's Fees.** So long as the Bankruptcy Case is open, the Debtor will pay the required statutory fees to the Office of the United States Trustee from funds available to Debtor.

7.7.   **Closing of the Case.** At such time as the Plan has been substantially consummated, that is, when all things requiring action by the Court have been done and the Plan has been substantially consummated, this Bankruptcy Case shall be closed. To close the case, Debtor shall file an Application for Final Decree showing that the case has been substantially consummated.

7.8.   **Governing Law.** Except to the extent that federal law (including Bankruptcy Code and Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, construed and enforced in accordance with the laws of the State of Arizona, without giving effect to the principles of conflicts of law thereof.

7.9. **Confirmation without Acceptance From All Impaired Classes ("Cramdown").** If any Class that is impaired under this Plan votes to reject the Plan or is deemed to have rejected the Plan in accordance with Bankruptcy Code § 1126, the Debtor hereby requests confirmation of this Plan pursuant to Bankruptcy Code § 1129(b) to satisfy the requirements for Confirmation of the Plan.

7.10. **Discharge.** The provisions of 11 U.S.C. § 1141(d)(5) shall govern the discharge of the Debtor.

7.11. **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Bankruptcy Case after the Effective Date as legally permissible including jurisdiction to:

7.11.1. Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

7.11.2. Grant or deny any application for allowance of compensation or reimbursement of expenses authorized under Bankruptcy Code or Plan;

7.11.3. Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from, or cure related to assumption or rejection;

7.11.4. Ensure that distributions required under this Plan are accomplished in accordance with this Plan;

{0006001.0000/00987540.DOCX / 2}

7.11.5. Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;

7.11.6. Enter any necessary or appropriate orders to implement or consummate this Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan.

7.11.7. Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any person's obligations incurred in connection with this Plan;

7.11.8. Hear and determine any motion or application to modify this Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with this Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by Bankruptcy Code;

7.11.9. Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of this Plan;

7.11.10.     Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

7.11.11.     Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order;

7.12.   Adjudicate the Disputed Claims and any cause of action or claims of the Debtor; and

7.13.   Issue a final decree and enter an order closing the Case.

**DATED** this 4th day of June 2019.

**FILED BY**:
**Michael Baldwin, PLC**

By     */s/ Michael Baldwin*
Michael Baldwin

**AND**

**Engelman Berger, P.C.**

By     */s/     Bradley D. Pack*
Bradley D. Pack
*Co-counsel for the Debtor*